# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **PATRICIA KIDD,**<br>    Plaintiff,<br>v.<br><br>**COUNTY OF INGHAM,**<br>    Defendant. | **CASE NO.:**<br><br><br><br>**PLAINTIFF DEMANDS A JURY** |

Collin H. Nyeholt (P74132)
LAW OFFICES OF
CASEY D. CONKLIN, PLC
4084 Okemos Road, Ste B
Okemos, MI 48864
(517) 522-2550
collin@caseydconklin.com

## COMPLAINT and JURY DEMAND

### JURISDICTION AND VENUE

1. Plaintiff PATRICIA KIDD is a permanent resident of Eaton County, Michigan. She is domiciled within the jurisdictional bounds of the Western District of Michigan. Her principal place of employment, at the time of the events described in this Complaint, was at a facility owned and operated by Defendant Ingham County in Mason, Michigan.

1

2. Defendant INGHAM COUNTY ("Defendant") is a municipal organization in the State of Michigan. It is therefore domiciled within the jurisdictional bounds of the Western District of Michigan.

3. This claim stems from Defendant's actions towards Plaintiff during the course of her employment that occurred in Ingham County, MI.

4. The Court may exercise *general in personem* jurisdiction over the Defendants by reason of their permanent business presence within the Western District. In the alternative, the Court may exercise *specific jurisdiction* over the dispute because the transaction or occurrence giving rise thereto resulted from Defendants' business activities within, and directed towards, the Western District of Michigan.

5. This is a claim for violation of the Americans with Disabilities Act of 1990, 42 USC § 12101 *et seq.*

6. The Court may exercise subject matter jurisdiction over the claims stemming from federal law pursuant to 28 USC § 1331. The Court may exercise pendent jurisdiction over the claims stemming from state law pursuant to 28 USC § 1367.

7. Venue is properly laid in this forum pursuant to 28 USC §§ 1331(b)(1) and (b)(2).

## COMMON ALLEGATIONS

8. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

9. Plaintiff is, and throughout the events described in this Complaint was, employed by Ingham County Road Department and worked in the Ingham County Financial Services Department doing work for Ingham County Road Department employees and retirees.

10. Plaintiff is a disabled worker. She suffers from phobias (heights), PTSD, anxiety, resulting panic attacks and related migraines. Plaintiff's symptoms are exacerbated by working in close proximity to other individuals. They are also exacerbated by working in buildings in higher levels than the ground floor. Heights can trigger her panic attacks. Being able to walk outside calms her and prevents her from having panic attacks. Being on the ground floor helps her avoid panic attacks because she is able to readily step outside. This has all been documented by her physicians and documentation of same has been provided to your clients on several occasions.

11. On July 11, 2016 Plaintiff made a request for accommodations of her disability to Defendants' former ADA Coordinator, Brenda Mills. Plaintiff apprised Mills of her condition and of her need to have a ground floor office as a result.

12. Mills accommodated her partially in this respect by agreeing to move her, and two other coworkers in the Finance Department, to the first floor of the Hilliard building on or about December 6, 2016. The relocation was helpful, but not sufficient to arrest her symptoms. The first floor office was not ground floor, as her doctor suggested. And, it was not a quiet environment. Plaintiff continued to suffer anxiety attacks and migraines resulting from same.

13. In the midst of all of this, there was a change of personnel within the Department. Sue Graham became the HR Director in around June of 2018. Steven Babinchak became the Finance Director in or around December of that year. Stephanie Banthem replaced Mills as the ADA Coordinator. Babinchak, Graham, and particularly Banthem have been less willing to accommodate Mrs. Kidd than their predecessors.

14. By February of 2019, the situation became unbearable. Mrs. Kidd attempted to secure a transfer to a different position, any open position, which would have allowed her to work in a less busy section of the ground floor as an accommodation.

15. Plaintiff contacted Stephanie Banthem (whose name is now Stephanie Keith) and Steve Babinchak and requested that they look at the transfer as an accommodation for her disability and additional accommodations. Incredibly, she was informed that HR "did not have" her records and she was made to

resubmit them. She therefore re-submitted medical documentation, signed by her physician, which confirmed that she needed the transfer to a different office as an accommodation for her disability. Despite all of this, she was denied the requested transfer as an accommodation.

16. Plaintiff has suffered retaliation for her requests for accommodation. She saw her job duties systematically removed from her. During February of 2019, the employer began stripping job duties from my client. On February 15, 2019, after a meeting with several employees, administration of dental and vision, Humana, PHP Health, Life, PARA/SARS were taken from my client and transferred to another worker, Insurance Coordinator Aimee Eisen. Her overtime and equalization duties were given to other employees. On February 19th, an email was circulated indicating that my client would no longer be performing Employee Orientations. These functions were given to Aimee Eisen and to Stephanie Keith, both are younger woman. All of this reduced her work by approximately 30%. She was also removed from consideration for future opportunities.

17. Defendant's reduction of Plaintiff's job duties was based upon adverse consideration of her disability, and of her requests to accommodate same.

18. Despite the overt retaliation and discrimination she was encountering, my client continued to correspond with Stephanie Banthem about her needed accommodations. On March 6, 2019 my client met with Banthem and Joan Clous regarding her needed accommodations. She was told that her requested accommodations were denied, but she could "take FMLA." Banthem followed up with an email where she offhandedly denied her request for a first floor office, asserting that it was "not supported by medical documentation" (even though it plainly was.)

19. Banthem went on to say, in an email, that "as we discussed, we cannot grant your desired request for a transfer to a private office" and indicated that "if you can think of any other accommodations that you believe would help you perform your job duties, please contact me so we can discuss them."

20. The next day, March 7, 2019, Plaintiff emailed Banthem and requested, as an alternative to the first floor office in the Hilliard building, and several other options. She requested the right to telecommute, or assignment to a different building.

21. Banthem, in flagrant disregard for her obligations to engage in an interactive process under the ADA, *never even responded* to the alternate requests.

22. Ms. Banthem's refusal to even *consider* allowing my client to telecommute was particularly egregious because several other workers were allowed to work via VPN. Banthem's failure to respond to this alternate suggestion plainly violated her obligations to engage in an interactive process.

23. Plaintiff continued to attempt to work at her job without her needed accommodations. But, her performance was impacted. She received a Pre Determination Hearing notice on September 16, 2019 for various performance issues resulting from her panic attacks, migraines, and difficulty concentrating. All of this could have been avoided if Banthem had abided by her lawful obligations and allowed her to telecommute or transfer to a ground floor at a different location.

24. On September 20, 2019 Steve Babinchak informed Plaintiff that she, and her Road Department coworkers or employees in "Road" financial services, would be moving upstairs to the second floor. He announced that the Road Department, including Plaintiff, would be moved upstairs at a later time. The stated reason for the move was so that the HR office could move from Lansing to Mason in the Road Suite and use two other suites on the first floor where my client was assigned. He referred to this move as "musical chairs." During the meeting Aimee Eisen stated that move would take 'over a year or so.' This was contrary to the existing accommodations Plaintiff had in place, so she contacted Stephanie Banthem and requested that they continue to honor her accommodations.

25. Banthem, yet again, refused to honor Plaintiff's request for accommodations. Plaintiff's things were moved to an office shared by a County worker that does payroll for the county which handles 1500 employees compared to my client's 120 employees. This caused a substantial increase in employees calling, walk-ins, vendors, etc. This was plainly contrary to her doctor's recommendation that she be provided a quiet workspace. She began to suffer panic attacks as a result. This caused her to suffer migraines. And, it adversely impacted her performance.

26. Plaintiff immediately emailed Stephanie Banthem and told her that this was a concern, as it was contrary to her existing accommodations. Incredibly, Banthem had the audacity to claim that my client had

5

never made a request for accommodations for a ground-floor work location, saying "[t]he documentation you provided earlier this year was unrelated to the new situation you've described below; it did not address any need to be located on a specific floor of the building. If your office environment is changing and you need to make an ADA request as a result of that, we would require new paperwork."

27. This, of course, was a grossly inaccurate statement. Plaintiff's sole request for accommodations, from Day 1, has been for a quiet, ground floor work location. Her medical provider's documentation unequivocally states same. Plaintiff objected to Banthem's flagrant disregard of the ADA by making her re-submit documentation of her disability, but did so anyway. Her doctor produced a document that stated, quite explicitly, that her diagnosed condition required her to have a ground floor work location.

28. On October 31, 2019, Banthem emailed Plaintiff and indicated that she would refuse to provide any accommodation for her at all.

29. On November 14, 2019, Plaintiff's physician sent yet another letter to Stephanie Banthem with more details regarding her symptoms and requesting, yet again, that she provide accommodations prior to her return to work. Banthem has ignored this request in its entirety.

30. Plaintiff initiated EEOC charge number 471-2019-04835, alleging failure to accommodate, disability discrimination, and retaliation against Defendant.

31. The EEOC attempted to engage Defendant in the interactive process to accommodate Plaintiff's disability to no avail.

32. On January 3, 2020 Plaintiff's counsel, the undersigned, appeared in the EEOC charge, contacted the Defendant, and made a particularized demand for accommodations. Defendant never responded to Plaintiff's counsel's correspondence.

33. On January 22, 2020, in a bold act of retaliation, the Defendant issued a "pre-determination notice" to Plaintiff. This is a step in the disciplinary procedure used by Defendant against Plaintiff. The notice set a disciplinary conference hearing against Plaintiff on February 10, 2020.

34. Plaintiff, through counsel, initiated an additional EEOC charge alleging retaliation for her prior EEOC activities by issuing the predetermination notice on February 3, 2020. The EEOC assigned Charge Number 471-2020-01737 to this additional charge.

35. On February 21, 2020, the EEOC issued 90 day "right-to-sue" letters in Charge Numbers 471-2019-04835 and 471-2020-01737.

36. This lawsuit timely follows.

## COUNT 1 – Disability Discrimination
*In Violation of the Americans with Disabilities Act, 42 USC § 12101 et seq, as amended*

37. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

38. Defendant employed 15 or more employees, including part time employees, for each workday in each of 20 or more calendar weeks in the current or proceeding year of the date of the events described herein and is, therefore, a "covered employer" as that term is defined by 42 USC § 12111(5)(A) and is a "covered entity" as that term is used in 42 USC § 12111(2).

39. At the time of the events described in this Plaintiff suffered, and continues to suffer, from mental conditions that, absent proper accommodations that may impair and substantially limit numerous "major life activities" as that term is defined by 42 USC § 12102(2) including, but not limited to working, sleeping, and interacting with others. She, therefore, suffered from a disability as that term is defined by 42 USC 12102(1).

40. Plaintiff is a qualified individual with a disability as that term is defined by 42 USC 12102(1).

41. Plaintiff possessed the appropriate educational background, employment experience, skills, licenses, and other requirements of the position of employment with Defendant.

42. Plaintiff can perform the essential functions of her position with or without accommodations.

43. Plaintiff was subjected to the following adverse employment actions:

    a. Plaintiff was subjected to heightened scrutiny at work, and wrongful lowered performance reviews, as a pretext for discipline and retaliation,

    b. Reasonable accommodations that had been put in place to allow Plaintiff to continue working were removed, without explanation,

    c. Defendants refused to engage Plaintiff in the legally mandated interactive process to accommodate her disability, and

    d. Plaintiff was refused reasonable accommodations to allow her to continue working.

44. Plaintiff was discriminated against in a way prohibited by the act when Defendant

    a. Harassed her because of her disability through heightened scrutiny of her job performance,

    b. Denied her the reasonable accommodations for her disability that she requested, and

    c. Refused to engage in the interactive process after her requests to the disability coordinator, in plain violation of 42 USC § 12112(b)(5)(A) and 29 CFR 1630.2(o)(3) and 29 CFR app 1630.9,

    d. Refused to engage in the interactive process in good faith with the EEOC,

    e. Refused to *even respond* to her counsel's attempts to engage the Defendant in the interactive process, and

    f. Retaliated against her by imposing additional discipline in response to her demands to engage in the interactive process.

45. Plaintiff has suffered the following damages as a result of the Defendants' violation of his rights:

    a. Humiliation, stress, anger, and outrage resulting from the willful violation of her rights described herein, which are compensable with an award of exemplary damages.

    b. Attorney's fees and costs wrongfully incurred due to Defendant bad faith and dilatory tactics in attempting to resolve Plaintiff's claims pre-suit, as described herein.

    c. Attorney's fees and courts costs in bringing and maintaining the instant action.

## COUNT 2 – Disability Discrimination
***In Violation of Michigan's Persons with Disabilities Civil Rights Act, MCL § 37.1202***

46. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

47. Defendant is an "employer" as that term is defined by MCL § 37.1201(b).

48. Plaintiff has a "disability" as defined by MCL § 37.1103(d)(i)(A) and Plaintiff is therefore a "person with a disability" as that term is defined in MCL37.1103(h).

49. MCL § 37.1202(1)(b) provides that it is unlawful for an employer in the State of Michigan to "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position."

50. Despite her condition, Plaintiff is able to perform the essential functions of her job.

51. Plaintiff was discriminated against in a way prohibited by the act when Defendant

   a. Harassed her because of her disability through heightened scrutiny of her job performance,
   b. Denied her the reasonable accommodations for her disability that she requested, and
   c. Refused to engaging in the interactive process after her requests to the disability coordinator, in plain violation of 42 USC § 12112(b)(5)(A) and 29 CFR 1630.2(o)(3) and 29 CFR app 1630.9,
   d. Refused to engage in the interactive process in good faith with the EEOC,
   e. Refused to *even respond* to her counsel's attempts to engage the Defendant in the interactive process, and
   f. Retaliated against her by imposing additional discipline in response to her demands to engage in the interactive process.

52. Plaintiff has suffered the following damages as a result of the Defendants' violation of her rights:

   a. Humiliation, stress, anger, and outrage resulting from the willful violation of her rights described herein, which are compensable with an award of exemplary damages.

    b. Attorney's fees and costs wrongfully incurred due to Defendant bad faith and dilatory tactics in attempting to resolve Plaintiff's claims pre-suit, as described herein.

    c. Attorney's fees and courts costs in bringing and maintaining the instant action.

## COUNT 3 – RETALIATION
### *In Violation of the Americans with Disabilities Act 42 USC § 12101 et seq, as amended*

53. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

54. The ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." Further, the ADA makes it unlawful to "coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]." 42 USC § 12203(b).

55. Plaintiff has opposed Defendant's continued and ongoing violations of the ADA by:

    a. Repeatedly requesting that the employer conform its conduct to the law by engaging her in the mandated interactive process, and provide disability accommodations.

    b. Complaining to the EEOC about the Defendant's ongoing disability discrimination, failure to provide accommodations, and failure to engage in the interactive process.

    c. Contacting the Defendant, through counsel, to attempt to engage in the interactive process and otherwise end ongoing violations.

56. In so doing, Plaintiff opposed a violation of the Act: Defendant's continued discrimination against her, failure to accommodate, and retaliation for her opposing same. And, she sought to exercise her rights

under the Act: Defendant's obligation to engage in an interactive process with her to accommodate her disability.

57. Defendant retaliated against Plaintiff by:

   a. Hyper scrutinizing Plaintiff's job performance,

   b. Disciplining Plaintiff based on the hyper scrutiny,

   c. Reducing Plaintiff's job duties and privileges of employment.

58. But for Plaintiff's request for accommodations, and opposition to Defendant's continued discrimination against her, Defendant would not have taken the actions against her described herein.

59. Plaintiff incorporates by reference, and herein reaffirms, her allegations as to the damages she has suffered from Defendant's violation of her rights as delineated herein.

## COUNT 4 – PDCRA RETALIATION
*In Violation of Michigan's Persons with Disabilities Civil Rights Act MCL § 37.1602(a)*

60. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

61. The PDCRA prohibits an employer from retaliating or discriminating against a person who has opposed a violation of the Act. MCL § 37.1602(a).

62. Plaintiff incorporates by reference, and herein reaffirms, the factual allegations in favor of her ADA Retaliation count as if fully restated herein.

63. Plaintiff incorporates by reference, and herein reaffirms, her allegations as to the damages she has suffered from Defendant's violation of her rights as delineated herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief from this Honorable Court:

1. An ORDER enjoining Defendants from further acts of discrimination and retaliation against the Plaintiff and any others similarly situated,

2. Such other COMPENSATORY damages as may be appropriate to compensate Plaintiff for her emotional pain and distress resulting from Defendant's wrongful violation of her rights as delineated herein,

3. EXEMPLARY damages, in whatever amount the Court should deem appropriate, pursuant to Michigan law,

4. PUNITIVE damages, in whatever amount the Court should deem appropriate, pursuant to 42 USC § 1981a(b)(3),

5. An AWARD of Attorney's fees, in an amount determined reasonable by the Court, so wrongfully incurred in bringing this action, pursuant to the various statutes identified herein,

6. Pre and post judgment interest at the appropriate statutory rate, and

7. Such other relief as this Court may deem just and appropriate in law or in equity.

**PLAINTIFF DEMANDS A JURY**

Respectfully Submitted,

Dated: 4/10/2020

/s/ Collin H. Nyeholt
Collin H. Nyeholt
Attorney for the Plaintiff

AFFIDAVIT

STATE OF MICHIGAN    )

_____ COUNTY )

Patricia Kidd, being sworn, says:

I verify, under penalty of perjury, that I have read and made this complaint and attest that those facts stated of my own knowledge are true and those matters stated of which I have been informed I believe to be true after reasonable inquiry.

/s/ *Patricia Kidd*
Patricia Kidd

Date: 4-20-20  /  Time: 1:50 pm

**Notary block:**

*Elizabeth A. Johnson*
Elizabeth A. Johnson, Notary Public
Shiawassee County acting in Ingham County, Michigan
My Commission expires 11/12/2023
Remotely acting under Executive Order 2020-41
Signatory's location: Eaton County, Michigan
Notarized using electronic/remote technology

Elizabeth A. Johnson
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF Shiawassee
My Commission Expires Nov. 12, 2023
Acting in the County of Ingham